

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

October 10, 1957

Hon. J. M. Falkner, Commissioner
Department of Banking
Austin 14, Texas

Opinion No. WW-274

Re: Requirements as to collateral under the
provisions of Section 7 of Article 1524a.

Dear Mr. Falkner:

We have received your request for the opinion of this
office involving the application of the provisions of Article
1524a, Vernon's Civil Statutes, to certain factual situations.
In answering your request we will discuss separately each fac-
tual situation in the order stated in your request.

"1) A corporation regularly borrows large sums of
money from several banks, insurance companies and
other financial institutions, pledging its notes
receivable as security for such loans. The moneys
borrowed are used by the corporation in making
loans to the general public, consistent with its
corporate purpose, 'to accumulate and lend money.'
The notes taken upon these loans are in turn used
as security for further advances to the corpora-
tion from the banks, insurance companies, and other
financial institutions.

"Section 12 of Article 1524a, V.C.S., provides
in part:

"'. . . The words "bonds," "notes," "certifi-
cates," "debentures," and "other obligations," as
used in this Act, shall not be construed to cover
or include notes executed by corporations to banks
and other financial institutions for money borrowed
by such corporations for use in the usual course of
its business.'

"In the past we have not attempted to require
collateralization under Section 7 of Article 1524a

of notes, bonds, debentures or other obligations
issued by the corporation to banks, insurance
companies or other financial institutions for
moneys borrowed.  The question has been raised,
however, whether all bonds, notes, debentures or
other obligations issued by a corporation to a
bank or other financial institution for moneys
borrowed come within the above-quoted exemption
set out in Section 12.  Attorney General's Opin-
ion No. 0-5858, dated March 4, 1944, seemingly
makes a distinction between moneys borrowed 'in
the usual course of business' and moneys borrowed
'for the purpose of accumulating a working capi-
tal.'

"We would appreciate your opinion as to
whether or not all notes, bonds, debentures and
other obligations for moneys borrowed issued to
banks, insurance companies and other financial
institutions are exempt, by virtue of Section 12,
from the collateralization requirements of Section
7, Article 1524a, V.C.S.  If not, under what cir-
cumstances should collateralization be required?"

In construing the provisions of Article 1524a, Ver-
non's Civil Statutes, it may be noted that the legislative
intent in its enactment was to provide a reasonable safeguard
for the public in the purchase of certain types of securities.
This intent is evidenced by the repetition of the phrase,
"offer for sale or sell in Texas its bonds, notes, certifi-
cates, debentures, or other obligations" contained in Sections
1, 2, 4, 7, 8, 9 and 12 of the Act.

Section 12, supra, states that the words "bonds",
"notes", "certificates", "debentures", and "other obligations"
as used in the Act shall not be construed to cover or include
notes executed by corporations to banks or other financial in-
stitutions for money borrowed by such corporations for use in
the usual course of business, thereby making a distinction be-
tween money borrowed by a corporation evidenced by the notes
of the corporation, and money received from the sale of direct
obligations of the corporation to the general public by means
of personal or other solicitation.  Stated differently, it was
the legislative intent to require collateralization under the
provisions of Section 7 of the Act of the sales made by the
corporation to the general public of the securities designated
which constitute direct obligations of the issuing corporation,
as opposed to requiring collateralization of notes evidencing
money borrowed by the corporation from others for the purpose

of carrying on its business where, as a part of the consideration for the lending of the money, the lending institution would generally require the borrowing corporation to furnish collateral security therefor.

While it is true that the money received by a corporation, whether from the issuance and sale of its direct obligations to the general public as an investment or money borrowed from a bank or other financial institution, is used in the operation of the business for which the corporation is formed, it must be borne in mind that the Legislature, by the addition of Section 12 of the Act, intended that a definite line of demarcation be drawn between the corporation's right to offer for sale and sell its direct obligations to the public and the power of the corporation, under its charter, to borrow money in the usual course of business as a negotiated loan to be used in the conduct of its business.

The situation above described is applicable to corporations whose business it is to accumulate and lend money. In order to lend money the corporation must necessarily have a large amount of money available as working capital for the purpose of making loans to third parties. A bank receives deposits of A's money but uses A's money for the purpose of making a loan to B. A's money is not the property of the bank but is the property of A, but it is used by the bank in the ordinary course of business of making the loan to B. Under the banking laws the capital of the bank is required to be invested in certain securities which are not available for the purpose of making loans to customers of the bank. Thus, the position of the corporation described above is analogous to that occupied by a bank, and therefore it is our opinion that notes, bonds, debentures, or other obligations for money borrowed by the corporation from banks or other financial institutions are not subject to collateralization under Section 7 of the Act.

Opinion No. 0-5858 to the Honorable John Q. McAdams, Commissioner, by Honorable Grover Sellers, Attorney General of Texas, approved March 4, 1944, holds that obligations issued to banks or other financial institutions for the purpose of accumulating a "working capital" as opposed to increasing its "operating capital" are subject to collateralization. With this conclusion we are unable to agree, since, in essence, the true test is whether the direct obligation of the corporation is offered for sale and sold to the general public as opposed to the issuance of a direct obligation to a lending institution for the purpose of evidencing money borrowed by the issuer to carry on its business. Whether the proceeds are received for the purpose of accumulating a working capital or increasing its

operating capital is immaterial.   Opinion O-5858 is overruled insofar as it conflicts with this opinion.

> "2)  A corporation has solicited money from several individuals, issuing its notes to certain of the individuals and issuing debentures and bonds to the other individuals.  The notes, debentures and bonds issued have varying terms, some becoming due and payable within a year and others becoming due and payable in several years. The corporation contends that such issuance of its notes, debentures and bonds to individuals, each being a separate transaction rather than part of a series and each being issued in consideration for moneys borrowed from the individual, does not constitute a 'sale in Texas' of obligations which must be collateralized under Section 7, Article 1524a.

> "In the past this Department has required collateralization of obligations issued to individuals or companies other than banks, insurance companies or other financial institutions, irrespective of whether such issuance was the result of a single transaction in which the corporation borrowed money from the individual or company or was one of a series of obligations issued and sold or negotiated to the general public."

In the situation above described again the test to be applied is whether the direct obligations of the corporation are offered for sale and sold to the general public as opposed to the issuance of direct obligations to an individual or company for the purpose of evidencing money borrowed by the issuer to carry on its business.  The mere fact that the instrument evidencing the loan may be a note, bond, or debenture is immaterial since each of these instruments denotes a direct obligation on behalf of the issuer to pay money to the holder thereof.  It is also immaterial whether the direct obligation is represented by a single instrument or a series of instruments, since it is the substance and not the form of the transaction which must be looked to in order to determine whether such obligations should be collateralized by the issuer under the provisions of Section 7.

Although Section 12 refers specifically to "banks and other financial institutions" we do not believe that the Legislature intended to restrict the scope of the words "other institutions" to corporations engaged solely in the business of

lending money to borrowers.  For example, insurance companies, mentioned in Section 13, are engaged primarily in the business of issuing policies of insurance to the public, but under the insurance laws of the various states such companies are authorized to invest their capital, surplus and reserve funds in various types of investments, among which are generally included loans to individuals, associations, and corporations which are adequately secured by collateral.  In addition, there are many educational institutions which control funds which are held in trust for the benefit of the institution and, under the terms of the trust instrument such funds may be invested in loans to persons, associations, and corporations which are secured by adequate collateral.  It is our opinion that the language of Section 12 of the Act should not be restricted so as to prevent a corporation from securing a negotiated loan from an individual, association, or corporation whose principal business is not that of lending money to the general public, and if the test of whether the transaction is a negotiated loan from or a sale of securities to the lender is applied and the individual transaction constitutes a negotiated loan, then the provisions of Section 7, Article 1524a, are not applicable.

You have further stated that in the situation described in (2) and in other situations several of the individuals involved have executed verified waivers stating that the individual is familiar with the requirements of Section 7, Article 1524a, and that it is his expressed wish and desire that the corporation not be required to collateralize his note in accordance with Section 7, and ask whether you have the authority to accept such a waiver in a case where collateralization would otherwise be necessary.

There is no provision in Article 1524a, V.C.S., which would authorize the agency charged with its enforcement to waive any of its provisions.  It is fundamental that, unless specifically authorized, a public official charged with the enforcement of any law is prohibited from waiving any of the obligations imposed upon such public official under its provisions.  Therefore you do not have the authority to accept a waiver of the requirements of Section 7, Article 1524a, in any case where collateralization of the obligation is required.

"3)  A corporation issues and sells to the general public its notes, secured by notes receivable held by the corporation.  The maturity dates of the notes issued by the corporation vary except that under no circumstances will the maturity dates exceed 180 days from date of issuance.  In the event it is held these notes are subject to the collateralization provisions of Section 7, Article 1524a,

the corporation proposes the alternative plan
of selling the notes only to banks.  In either
event the notes issued would be negotiable by
the holder.

"Please advise us whether or not the notes
issued and sold to the general public and the
notes issued and sold to banks only are subject
to collateralization under Section 7, Article
1524a."

The test stated in answer to Questions (1) and (2),
supra, is again applicable to the factual situation just de-
scribed.  The fact that the maturity dates of the notes issued
does not exceed 180 days is immaterial if such notes are sold
to the general public.  In such case the provisions of Section
7, Article 1524a, are applicable since the transaction is a
sale, and the fact that the notes in question are proposed to
be sold only to banks and may be negotiated by the holder af-
ter the sale, does not alter the legal effect of the transac-
tion or dispense with the requirements of collateralization
since a bank is just as much a part of the public as an indi-
vidual.

In this connection our attention has been directed
to Opinion No. V-1489 by Honorable Price Daniel, Attorney Gen-
eral, dated August 6, 1952, which was addressed to you.  You
have advised that from the factual situation stated therein
there is an implication that it is immaterial whether the
transactions between the General Motors Acceptance Corporation
and the banks and other commercial firms acquiring the short-
term notes constitute loans to or purchases from General Motors
Acceptance Corporation.  The application of the test mentioned
above as to whether the transaction constitutes a loan or a
sale must be applied to the issuance and delivery of the short-
term notes in question, and to the extent that Opinion V-1489
implies that a sale of short-term notes, whether to banks, com-
mercial firms, or automobile dealers by General Motors Accept-
ance Corporation, is exempted from the provisions of Section 7,
Article 1524a, Opinion V-1489, is overruled.

"4)  A corporation issued and sold to the general
public a series of shares of preferred stock.  The
corporation proposes to replace the shares of pre-
ferred stock with either debentures or bonds or
both, of varying terms, at the option of the share-
holders.  Such debentures or bonds will be offered
to the present holders of the preferred stock, and
only to such holders, and the only consideration

which the corporation would accept would be its own preferred stock. The bonds and debentures will be negotiable (transferable on the books of the company only).

"Please advise us whether or not in your opinion the debentures or bonds issued under the above-described circumstances should be collateralized in accordance with the provisions of Section 7, Article 1524a."

Under the foregoing factual situation the corporation proposes to exchange shares of its preferred stock for its bonds or debentures, or both. It may be assumed that both the shares of preferred stock or the bonds or debentures have a fixed face value. In other words, the holder of a share of preferred stock of the par value of $100.00 would be permitted to exchange his share of stock for a bond or debenture having a face value of $100.00, and no monetary consideration would pass between the respective parties other than the mutual delivery of the stock and the debenture or bonds.

It is well settled that such a transaction would not constitute an exchange of personal property. Moreover, it is well settled that such a transaction constitutes a sale, although made for something else than money, where the property of one party is transferred for that of another at an agreed or market value, so that one thing is received in payment of the price of the other. In _Thornton v. Moody_, 24 S.W. 331,333 (Civ.App. 1893, error ref.), the rule was stated as follows:

"The criterion in these cases is whether there is a fixed price, as a determination of the value at which the things are to be exchanged. If there is such a fixed price, the transaction is a sale; but, if there is not, the transaction is an exchange."

This rule of law was again stated in _Griswold v. Tucker_, 216 S.W.2d 276,278 (Civ.App. 1940), and _McKinney v. City of Abilene_, 250 S.W.2d 924,925 (Civ.App. 1952, error ref., n.r.e.).

It is our opinion that, since the transaction referred to in your fourth question constitutes a sale of the debenture or bond, it is subject to the provisions of Section 7, Article 1524a, and must be collateralized.

## SUMMARY

Since the provisions of Article 1524a, Vernon's Civil Statutes, are applicable to corporations offering for sale and selling in Texas notes, bonds, debentures and other direct obligations of the corporation to the public, the applicability of these provisions, and particularly Section 7 of the Act, must be tested as to whether each individual transaction constitutes a sale of securities or a negotiated loan. The State Banking Commissioner cannot permit a voluntary waiver by a purchaser of direct obligations of a corporation of the collateralization requirements of Section 7, Article 1524a.

Where preferred stock is exchanged for debentures or bonds, both being of equal face value, such transaction constitutes a "sale" and not an "exchange" of personal property and therefore the debenture or bond must be collateralized under the provisions of Section 7, Article 1524a, V.C.S.

Very truly yours,

WILL WILSON
Attorney General of Texas

By C. K. Richards
Assistant

CKR:wb

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman
J. C. Davis, Jr.
B. H. Timmins, Jr.
John B. Webster
Wayland C. Rivers, Jr.

REVIEWED FOR THE ATTORNEY GENERAL

BY: W. V. Geppert